UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-cv-23347-ALTONAGA
(Criminal Case No.: 17-cr-20384-ALTONAGA)
MAGISTRATE JUDGE REID

YOANDRY BENITEZ GONZALEZ,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

Movant, Yoandry Benitez Gonzalez ("Benitez Gonzalez" or "Movant"), filed an Amended Motion to Vacate under 28 U.S.C. § 2255 (the "Amended Motion"). [ECF No.7]. The undersigned has reviewed all pertinent portions of the records in both this and the underlying criminal case. Furthermore, the undersigned has conducted an evidentiary hearing limited to movant's claim that his counsel was ineffective for failing to comply with his request to file a notice of appeal in his criminal case.

Upon consideration of the testimony and evidence presented at the evidentiary hearing and after reviewing the record and the governing authorities, the undersigned recommends that the Amended Motion to Vacate be **GRANTED** solely as to Movant's claim for Ineffective Assistance of Counsel for failure to file a notice of appeal, as set forth below.

### I.     Factual and Procedural Background

A.     <u>The Attempted Robbery</u>

On October 10, 2017, Movant pled guilty to Attempted Hobbs Act Robbery ("Count 2") and Aiding and Abetting the Brandishing of a Firearm during a Crime of Violence ("Count 3"). [CR ECF Nos. 21, 22 ¶ 1]. He also executed a factual proffer acknowledging that the proffer's factual allegations were sufficient to prove his guilt. [CR ECF No. 23]. The factual proffer established that in December 2016, Benitez Gonzalez and two accomplices, Giobel Fonseca Canete ("Fonseca Canete") and Edgar Fonseca Morales ("Fonseca Morales"), planned the robbery of an armored car. [*Id*. at 1-2[1]]. Benitez Gonzalez, who was an employee of the armored car company at the time, accompanied Fonseca Canete and Fonseca Morales as they followed the armored car on its route. [*Id*.]. While following the armored car, the men discussed their plans, including using firearms to rob the armored car. [*Id*.]. During the discussions, the men agreed that Benitez Gonzalez would receive a share of the proceeds from the robbery. [*Id*. at 2]. Around midday, Benitez Gonzalez left his co-conspirators and returned to Hialeah, a town within Miami-Dade County. [*Id*.]. Just before four o'clock, Fonseca Canete and Fonseca Morales carried out the attempted robbery, which occurred outside of a T.D. Bank in Homestead, Florida, an area where the three men had been earlier in the day. [*Id*. at 2-3]. Movant was not present during the robbery. [*Id*. at 2].

Both Fonseca Canete and Fonseca Morales were armed during the robbery. [*Id*. at 2-3]. They confronted the armed guard at gunpoint and a gunfight ensued. [*Id*.]. Fonseca Canete,

---

[1] All page citations to ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

Fonseca Morales, and the guard were shot. [*Id*.]. Fonseca Morales died at the scene, and Fonseca Canete fled but was captured a short while later. [*Id*.].

      B.      <u>The Change of Plea Hearing</u>

At the Change of Plea Hearing, which took place on October 10, 2017, Benitez Gonzalez was placed under oath and advised that, if he did not answer truthfully, he could be charged with perjury. [CR ECF No. 40 at 5]. He was further advised that if he did not understand any questions or wanted to speak to his attorney, Jose Batista ("Batista"), he should let the court know. [*Id*. at 4]. Benitez Gonzalez stated that he had discussed the indictment with Batista and understood the charges. [*Id*. at 6]. He also stated that he was fully satisfied with Batista's representation and advice. [*Id*.].

The prosecutor then set forth the elements of Count 2 and Count 3 and clarified that Movant was pleading guilty to solely brandishing and not discharging the firearm. [*Id*. at 6-7]. After that, Batista advised the court of the steps he took to familiarize Movant with the charges. [*Id*. at 8-9]. Batista and Movant acknowledged that they had reviewed the indictment and applicable legal authority. [*Id*. at 8]. Batista noted that Movant was hesitant about pleading guilty because he was not present at the scene of the attempted robbery. [*Id*.]. Batista assured the court, however, that he had explained to Movant that he was still legally culpable. [*Id*. at 8-9]. Movant agreed that he understood the charges. [*Id*.].

Next, Movant acknowledged that he had read and signed the plea agreement after discussing it with Batista. [*Id*. at 10]. He further stated that he understood that prior to sentencing, a Presentence Investigation Report ("PSI"), recommending an advisory sentencing range, would be prepared. [*Id*. at 10-11]. Movant was advised and stated that he understood that the ultimate sentence he received might be different from the guideline range or the sentence he and Batista

had discussed. [*Id*. at 11]. Movant also said he understood the court could impose a sentence up to the statutory maximum of twenty years for Count 2 and a mandatory consecutive seven-year term for Count 3. [*Id*. 11-12].

Movant then stated that he understood that the parties had agreed to a base offense level of twenty, which would be increased by eight, because the object of the offense was a financial institution, and one of the victims sustained a permanent and life-threatening bodily injury. [*Id*. at 12]. The parties also agreed to a three-level reduction for Movant's acceptance of responsibility. [*Id*. at 12-13]. Movant claimed he understood that he would be sentenced to a consecutive term of eighty-four months for Count 3 and that he was giving up his right to appeal unless his sentence exceeded the statutory maximum or was an upward variance from the guideline range. [*Id*. at 12-13].

Movant then acknowledged that no one had made him any promises or assurances in exchange for his guilty plea. [*Id*. at 14]. Likewise, he affirmed that he was not pressured, forced, or coerced to plead guilty but was pleading guilty because he was, in fact, guilty as charged. [*Id*.]. Movant confirmed that he understood the rights he was giving up by entering a guilty plea. [*Id*. at 14-15]. He also acknowledged that the facts contained in the factual proffer were true with the understanding that he was not present at the time of the attempted robbery. [*Id*. at 16-19]. Movant then entered a guilty plea as to both charges. [*Id*. at 20]. The court found the plea to be knowing, voluntary, and supported by an independent basis in fact. [*Id*.].

    C.    <u>Sentencing</u>

Movant objected to paragraphs nine through thirteen of the PSI, which detailed another armed robbery committed by his two co-conspirators. [CR ECF No. 27 at 1]. He argued that he was not involved in that robbery. [*Id*.]. He further contended that a sentence of fifty-seven months

for Count 2 when combined with the mandatory consecutive eighty-four-month sentence for Count 3 was sufficient under the factors set forth in 18 U.S.C. § 3553(a). [*Id*. at 2-4].

At the sentencing hearing the parties agreed that the sentencing guidelines had been properly calculated. [CR ECF No. 41 at 9]. The guideline range was fifty-seven to seventy-one months for Count 2 plus a mandatory eighty-four months for Count 3. [*Id*.]. Subsequently, Batista reiterated that the court should sentence Movant at the bottom of the guideline range and provided his reasoning. [*Id*. at 7-9]. The prosecutor argued an appropriate sentence would be at the upper end of the guideline range, noting the serious nature of the crime, which resulted in the death of one of the perpetrators and serious injury to the guard. [*Id*. at 9, 12-13].

After considering the PSI, the sentencing factors set out in 18 U.S.C. § 3553, and the seriousness of the offense, the court determined that a sentence of 141 months was appropriate. [*Id*. at 18-20]. The court imposed a sentence of fifty-seven months for Count 2 with a mandatory consecutive sentence of eighty-four months for Count 3. [*Id*. at 20]. Judgment was entered on December 20, 2017, [CR ECF No. 32], and an Amended Judgment was entered on April 30, 2018. [CR ECF No. 38]. Pursuant to the Federal Rules of Appellate Procedure, Movant had fourteen days to appeal the judgment. Fed. R. App. P. 4(b)(1)(A)(i). He did not do so.

    D.    <u>The § 2255 Motion</u>

On August 16, 2018, Benitez Gonzalez filed a *pro se* § 2255 Motion to Vacate, [Cv-ECF No. 1], and on October 3, 2018, he filed an amended § 2255 Motion to Vacate (the "Amended Motion"). [ECF No. 7]. In the Amended Motion, Benitez Gonzalez challenged his conviction and sentence. He contended, *inter alia*, that he was denied effective assistance of counsel because his attorney, Batista, incorrectly advised him that he could not appeal. [Cv-ECF No. 7, at 6]. Indeed, a careful review of the *pro se* Amended Motion reveals that Benitez Gonzalez argued "[h]e asked

5

Mr. Batista if he could appeal the sentence. Mr. Batista told Mr. Gonzalez the sentence 'was [sic] it was' and that Mr. Gonzalez could not appeal." [Cv-ECF No. 7, at 6].

The government responded arguing, *inter alia*, that Batista was not ineffective because 1) the underlying plea was counseled and voluntary, 2) Movant received a significant benefit from pleading guilty, as he was facing a maximum sentence of life in prison with a mandatory consecutive sentence of 10 years if he had gone to trial, and 3) Movant's statements at his plea colloquy show that Movant was not dissatisfied with Batista's representation and give rise to a strong presumption that Movant's plea was constitutionally adequate and therefore unassailable in a § 2255 proceeding. [Cv-ECF No. 9]. Benitez Gonzalez replied and requested an appeal, vacatur, or a hearing on the issues. [Cv-ECF No. 13].

This Court then issued a Report recommending that the Amended Motion be denied on the merits. [Cv-ECF No. 16]. Movant subsequently filed objections and responses, [Cv-ECF No. 19], and, after obtaining counsel, filed amended objections and responses, [Cv-ECF No. 22], to the Report and Recommendations. In the amended objections, Benitez Gonzalez explained that he had asked Batista to file an appeal, which Batista did not do, and argued that Batista's failure to file an appeal was a *per se* violation of his right to appeal. [Cv-ECF No. 22, at 2-3]. Benitez Gonzalez further argued that he was entitled to an evidentiary hearing on the issue, irrespective of whether his remaining claims had merit. [Cv-ECF No. 22, at 3-5].

The government filed a response to Movant's objections agreeing that the court should sustain Movant's objection and grant Movant's request for an evidentiary hearing on that issue, because Movant's claim that his counsel had failed to file a notice of appeal at Movant's request, if true, would be a *per se* violation of his right to effective assistance of counsel. [Cv-ECF No. 25].

6

The government also requested that the court defer ruling on the remaining issues until after the evidentiary hearing. [*Id.*] Movant agreed. [Cv-ECF No. 26].

As a result, the district court ordered an evidentiary hearing be held on the limited issue of whether Movant's counsel rendered ineffective assistance by failing to file a notice of appeal in Movant's criminal case. [Cv-ECF No. 27].

## II.   Evidentiary Hearing

The undersigned held an evidentiary hearing on July 23, 2021. [ECF No. 43].[2] Movant testified and called his mother, Alexis Gonzalez Herrera ("Gonzalez Herrera"), as a witness. The government called Batista as a witness. Neither party submitted exhibits.

### A.   Benitez Gonzalez's Relevant Testimony

Benitez Gonzalez testified that while represented by Batista, he pled guilty to Count 2 and Count 3. In support of his guilty plea, Benitez Gonzalez signed a plea agreement that contained an appeal waiver. Benitez Gonzalez acknowledged that Judge Altonaga had asked him about the appeal waiver during his plea colloquy, but contended that he did not actually understand the waiver at that time. Instead, Movant claims he responded to Judge Altonaga's inquiries by replying only "yes" or "no" as Batista had instructed.

According to Benitez Gonzalez, Batista said he would try to get a sentence of only eight or nine years, and Benitez Gonzalez signed the plea agreement with that expectation. Benitez Gonzalez understood that his guilty plea as to Count 3 mandated an eighty-four-month sentence and that his guilty plea as to Count 2 carried an advisory guideline range of fifty-seven to seventy-

---

[2] Movant's evidentiary hearing was scheduled and reset at Movant's request to provide for an in-person evidentiary hearing and for Movant to have sufficient time to consult with habeas counsel before the hearing. [ECF Nos. 31, 38, 40].

one months. He, however, believed that because there was no mandatory minimum sentence for Count 2, Batista could and would ask Judge Altonaga for a sentence below the advisory guideline range. To Movant's surprise, at his sentencing hearing, Batista asked Judge Altonaga to sentence him to 141 months. Benitez Gonzalez was shocked by Batista's request, because Batista said he would try to get Benitez Gonzalez only eight or nine years. Although Benitez Gonzalez was given the opportunity to allocate during his sentencing, he did not do so because Batista had advised against it. The court sentenced Movant to 141 months. After sentencing, Batista told Movant he would visit Movant in jail and speak with him about the sentence.

Indeed, a few days later, Benitez Gonzalez met with Batista, and the pair discussed the sentence. According to Movant, during that conversation he specifically told Batista he wanted to appeal his sentence. Batista, however, explained to Movant that because he had signed the plea agreement, which included an appeal waiver, he had no right to appeal. During the evidentiary hearing, Movant stated as follows: "I told him 'look, I got 141 months, I want to appeal.' And that's what he answered…that I could not appeal because I had signed that contract." Batista then told Benitez Gonzalez that he had spoken to another attorney about the case and that the attorney agreed that Benitez Gonzalez could not appeal. Benitez Gonzalez accepted what Batista said, and he and Batista did not have another conversation about sentencing or appealing after that. After his talk with Batista, Movant informed his mother and other family members that he would not be able to appeal.

  B. <u>Gonzalez Herrera's Relevant Testimony</u>

Gonzalez Herrera corroborated Movant's testimony that Movant asked Batista to file an appeal, but Batista said he could not appeal. She testified that she spoke with Movant via telephone a few days after he was sentenced, at which point she asked him whether he could appeal. Movant

informed Gonzalez Herrera that Batista told him that he could not appeal. Three or four weeks after Movant's sentencing, Gonzalez Herrera again spoke with Movant about appealing, this time in person. Movant again informed Gonzalez Herrera that, according to Batista, Movant could not appeal because he had signed a piece of paper which said that he could not appeal. Both Movant and Gonzalez Herrera were dissatisfied with Movant's sentence.

      C.      <u>Batista's Relevant Testimony</u>

Batista testified that he represented Movant in his original criminal case. As Benitez Gonzalez's first language is Spanish, all his and Batista's communications were in Spanish. Batista recalled that Movant entered a guilty plea and signed a plea agreement in the criminal case. According to Batista, he discussed that agreement with Movant. In doing so, Batista explained the sentencing guidelines and statutory minimum mandatory sentences along with the appeal waiver in the agreement. Benitez Gonzalez was not originally pleased with the plea agreement, as it required him to plead guilty to charges involving a firearm although he was not at the scene of the robbery; however, the government was not amenable to Benitez Gonzalez pleading guilty to only Count 2. Batista recalled that at the plea colloquy Movant answered Judge Altonaga's questions about the plea agreement and Judge Altonaga accepted his plea.

Batista discussed the sentencing guidelines with Movant at Movant's Change of Plea Hearing, which took place before Batista received the PSI. During that conversation, Batista told Movant that he would try to persuade Judge Altonaga to give Movant a sentence on the lower end of the advisory guidelines for Count 2, as the judge had discretion over that sentence. Batista also informed Movant that he would face a mandatory minimum sentence of seven years for Count 3. Batista was not sure whether he had said he would try to get Benitez Gonzalez a sentence of eight or nine years. After Batista received the PSI, he discussed it with Movant. At sentencing, Batista

asked Judge Altonaga for a sentence at the bottom of the advisory guideline range. Batista was not sure whether he requested a downward variance for either Count prior to the hearing. Judge Altonaga sentenced Movant to 141 months, which Movant was disappointed about.

After sentencing, Batista met with Movant to discuss his sentence. Batista testified, however, that he had no recollection of discussing a possible appeal. In fact, when asked whether he recalled the conversations he had with Movant at the jail, whether he recalled if Movant asked him to file a notice of appeal, whether he had a conversation with movant regarding his ability to appeal, or whether he told Movant he did not have the ability to appeal because he waived his right to appeal in his plea agreement, Batista responded that he had "no independent recollection of any issues involving appeal."

Batista's practices as to filing notices of appeal vary from client to client, and he is not sure if he would have asked Benitez Gonzalez if he wanted to appeal. Batista believes that if Movant would have affirmatively asked him to appeal, he would have done so, but given the plea waiver in the agreement, he is not certain whether the issue was discussed.

### III.   Legal Analysis

A.   <u>Whether Batista Rendered Ineffective Assistance of Counsel by Failing to Appeal Movant's Sentence</u>

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for deciding whether a defendant has received ineffective assistance of counsel. The defendant must show (1) that counsel's performance failed to meet "an objective standard of reasonableness," *id*. at 688; and (2) that the defendant's rights were prejudiced as a result of the attorney's substandard performance. *Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005).

"An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Further, "[i]f the evidence establishes either that Petitioner's attorney acted contrary to his client's wishes, or that he failed to fulfill his duty to attempt to determine his client's wishes, prejudice is to be presumed, and Petitioner is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver." *Id*. at 793.

Indeed, as highlighted in *Gay v. United States*,

> [e]ven if a client has not made a specific request of his attorney to file an appeal, a court must examine "whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes." An attorney has the affirmative duty to consult when "(1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing." When the content of the communication between a petitioner and his attorney is not readily ascertainable from the record, an evidentiary hearing is required. These general principles are applicable even where the defendant has signed a limited waiver of his right to appeal. ***Specifically, the Eleventh Circuit has held that unless a petitioner waives all appellate rights, the rule that counsel must file notice of appeal upon request applies with equal force in circumstances where defendant contractually waived only some appellate rights***.

No. 09-21053-CR, 2011 WL 2909961, at *7 (S.D. Fla. July 18, 2011) (emphasis added) (internal citations omitted).

Here, Benitez Gonzalez claims he asked Batista to file an appeal on his behalf, but that Batista did not file an appeal and instead said he could not do so because of the appeal waiver in Benitez Gonzalez's plea agreement. Gonzalez Hererra's testimony corroborated this claim, and Batista's testimony does not refute this claim. Instead, Batista alleges that he does not recall his conversations with Benitez Gonzalez regarding appeal. Further, in analyzing Movant's plea

11

agreement, it appears that he did not waive *all* his appellate rights.[3] *See Gomez-Diaz*, 433 F.3d at 793; *Gay*, 2011 WL 2909961, at *3.

Thus, liberally construing Benitez Gonzalez's claim, and in light of the testimony presented at the evidentiary hearing, Movant's motion should be granted with respect to this claim. First, if in fact Movant asked Batista to file an appeal, Batista should have done so, despite the appeal waiver. Because both Movant and his mother consistently testified that Movant asked Batista to file an appeal, and because Batista does not refute this and, in fact, could not recall whether Movant had asked him to do so, this Court finds that Movant has established that he asked his counsel to appeal his sentence. As a result, Batista's performance was objectively unreasonable, because he failed to fulfill his constitutional duty to file a notice of appeal as requested. Second, because Batista acted contrary to Movant's wishes to file an appeal, prejudice is presumed, regardless of whether Movant can identify any meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver. Thus, Movant has satisfied the two prongs of the *Strickland* test and is entitled to an out-of-time appeal.

## IV. Recommendations

Based on the foregoing, it is recommended that

1) Movant's Amended Motion to Vacate [ECF No. 7] be **GRANTED** solely as to Claim 1 to the extent that he may file a belated appeal in his criminal case;
2) Movant's remaining claims be dismissed; and
3) The district court judge enter an amended judgment of conviction from which appeal may be taken so that Movant may file a Notice of Appeal.

---

[3] The appeal waiver in Movant's plea agreement allows Movant to appeal if his sentence exceeds the maximum permitted by statute or exceeds the sentencing range set forth in paragraph 7 of the agreement. *See* [ECF No. 22 ¶ 13].

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 31st day of August, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **All Counsel of Record**